Good morning, and may it please the Court, my name is Maria Starczewski. I'm here on behalf of the appellants. With me at Council table is Horton Smith, who was the trial lawyer in this case. Your Honours, for the time of this oral argument, we are transformed into a Court of Admiralty, and a Court of Admiralty is first of all a Court of Equity, and also a Court that must consider the seaman, the person who has been injured on board a vessel, as a ward of Admiralty, as effectively a ward of the Court to be considered in these proceedings. This case was dismissed without Mr. King ever coming before the Court, without Mr. King ever having his day in Court. All right, well one of the things that's argued in the appellant's brief is that the claim is that the District Court never attempted to impose a lesser sanction than dismissal, but it appears that the Court did actually impose a lesser sanction, at least in the April 29th order, denying the motions to dismiss. So why was it ultimately an abuse of discretion to dismiss the case after that order wasn't complied with? It was really all sort of one proceeding. There wasn't a certain amount of sanctions actually awarded in the April 29th order that I have seen, and then immediately thereafter there was this notice that certain things were not filed, and then immediately thereafter without any further proceedings there was this final order of dismissal. We're talking about a very short period because the final order of dismissal was May 11th. Well, you know, before that, Court Order No. 1, February 5, they grant the motion to compel. They say the documents are due in seven days. Okay, nothing happens. Then there's a one-page motion saying, oh, I didn't get the order. Then there's February 25th order. Grant the motion. He says he's complied, but in case he hasn't, he's given another deadline to comply. He doesn't comply. Then you get to the April 29th order. So if we're talking equity, where were the seamen during this time being thought about by their lawyer? Because all of this, none of this would have happened if the lawyer had complied with the Court orders, or forgetting the Court orders had applied with the normal rules of discovery. So the Court rules apply whether you're an admiralty or not. The Court's... I mean, how do you... What do we have in our jurisprudence that would excuse this kind of noncompliance when time and again the district court gave second chances? Well, what you have is the most important part of this whole process, which is whether or not there's any prejudice to the defense. In this case, yes, we're talking about discovery, but we're talking about only the procedural aspects of discovery. The substantive aspects of discovery, as you know, consist of giving the documents to the defense. In this case, the documents all came from the defense. Remember, the accident happened on the defendant's vessel. The defendants had the witnesses. The defendants had the vessel. They had all of the evidence in this case. The defendants obtained all of the medical records. There is no document, there's no discovery that was obtained first by plaintiff, and then had the defendants were relying on the plaintiff or his counsel to obtain. And in fact, as Mr. Smith states in his reply brief, he had made his entire file available to defense counsel. It is simply the procedural aspects that... At some point, a court can expect lawyers to comply. I mean, your argument seems to be that Mr. King didn't do anything, right? So why should Mr. King suffer for a lawyer not responding to discovery? But at some points, courts have to run their courts, and at what point is enough enough? That's really what we're talking about. And we can't run courts  We still need some factual basis for this finding of prejudice. And in this case, there was not a single document that was missing that the defendants didn't get that they needed to get. And all these other cases that are being cited have at least an actual document that had not been provided, or they have a finding of willfulness, which in this case, there is no finding of willfulness. Or there's a finding that the actual client was in some way complicit. Well, there's recalcitrance on the part of the lawyer. I mean, electronic failures due to fax machines over and over. It's kind of the equivalent of the dog ate my homework kind of excuse here. And the district court, you know, if you do a chronology of this thing, basically, you stretch from filing in June all the way through April, or actually May of 2010, nothing has happened. And the discovery cutoff had not yet passed either. So there was still time for things to happen. So there hadn't been this, it sounds like a long time, but there hadn't been delay that would have been excessive as far as the court's docket is concerned. So although yes, the court is definitely allowed to manage its docket, you don't have the excessive delays that the cases that are cited mention. For instance, one case, there was a 13 to 18 month delay in service of the lawsuit itself, which obviously prejudiced the defendants who either didn't know or could not defend. In our case, it just doesn't rise to that kind of prejudice because discovery hadn't been over yet. That time period hadn't lapsed yet. Also, there's a reason why these... I don't quite understand that. You mean you don't have to comply while discovery is going on as long as the whole window hasn't closed? You do, but you can't really argue that the court's calendar was impacted when the discovery cutoff hadn't yet passed. It doesn't really start impacting the court's actual calendar. Well, it does if the lawyers keep coming back and telling you that things aren't going on. I mean, you know, some people actually do things without having to come to court every other day. You know, they just follow the rules. And one of the interesting arguments being made by defense is that, in fact, Mr. Smith should have filed something else in between May 7th and May 11th that, in fact... And the court's order mentions something like that, that maybe some discovery responses should have been filed with the court, which, of course, is not provided for by the rules, or that Horton Smith should have filed some sort of notice with the court, which, of course, is also not provided by the rules, in between May 7th and May 11th to prevent this dismissal. The rules don't preclude filing any kind of pleading with respect to status or notice, or here's what I'm doing, here's what I'm not doing. There's nothing in the rules that precludes that. On the other hand, it's not normally done while there's a motion pending before a judge. You don't normally file miscellaneous notices, and you don't... No, if there's a motion pending and something good is happening, you usually tell the court about it somehow. And I believe there are rules that prohibit filing, or at least do not require filing of discovery responses. Okay. So I would reserve the rest for rebuttal. Thank you. May it please the court. My name is Anthony Gaspage. I represent the Happily American Seafoods Company, and we would ask this court to affirm the lower court's decision dismissing the case for the egregious discovery but violations. Judge Lasnik properly exercised his discretion. The question before this court is whether Judge Lasnik abused his discretion. In other words, whether he did not apply the law correctly. Did he not consider the appropriate factors? And the clear answer, as made out not only in his original decision awarding sanctions, giving counsel and the party another chance to respond to discovery, but also in the actual dismissal, and then for a third time in the motion denying, or a denial of the motion to reopen, he made his, the facts and the... Well, upon counsel seems to be arguing that Mr. King didn't do anything wrong, that the there's no prejudice. That is the argument. That is one of the many arguments that are raised, Your Honor. Unfortunately, there is no case law to support that position. If you will, what counsel is arguing is really for a free out card for every person in every case that comes out. Just to say, just as counsel is coming up with excuses of why he didn't comply with the court's discovery rules, blaming his paralegal, blaming his fax machine, now what he also is arguing is that we should allow another out card by saying that, well, my counsel screwed up, and that I wasn't able to do, I didn't do that. Well, that isn't the rule, and that can't be the rule. Okay. Let me ask you this. The Judge Lasnik's first order was an order denying the motion to dismiss, and he said that plaintiffs shall respond to the outstanding first interrogatories and requests for production within seven days of the date of this order, and that order was dated the 29th of April, and then there was no response. Is that correct? There was no response by the plaintiff. By the plaintiff. And so the 11th day of May, which was more than seven days after, the district court awarded sanctions and dismissed the case, because there had still been no response to the first interrogatories. Then there was a motion for reconsideration by the plaintiff. Is that correct? To reopen, yes. Reopen. Effectively, yes. And was there a proffer then of a response to the interrogatory? Yes and no. Yeah. Yes and no. The motion was filed later in May, I believe it was the 18th, a week after the judge entered the order of dismissal. We filed an opposition to that motion. There was no timely reply, and then about a week later, counsel filed an untimely reply, which for the first time tendered a document which purported to be discovery responses. Okay. So my question was, at the time, this is where I was a little blurry in the record. At the time that the motion for reconsideration was filed, there was nothing that purported to be any kind of response? That's correct, and that was not submitted in support of that motion. If you look at the factors under Wanderer for when dismissal would be appropriate, and of course it is the most extreme sanction, one of those relates to prejudice to the parties seeking sanctions. What was the prejudice to your client? Well, you know, I've read the brief of appellant, and I listened to the argument, and I really have a difficult time understanding their position. First, I would say as a general matter that where there's a failure to produce documents in violation of multiple discovery orders, this court has held in numerous cases that there's a presumption of prejudice in a case. There's not necessity of showing actual precedence, but you would presume it, and there's a good reason. When people ask discovery questions because they need to know fundamental information, and when you don't provide it, it's difficult to defend the case. But even putting that aside, and putting the multiple times the request for work. She pointed out, and I don't think it's an excuse for not producing things, but discovery wasn't over yet, and of course there are discovery sanctions such as not considering some of their responses or excluding evidence as opposed to dismissal. So the real question is, in the scale of sanctions short of dismissal, and then dismissal over a year, was there sort of any interim sanction here, or any notice that it was going to be dismissed if they didn't work over the discovery? Well, as a practitioner for over 20 years in the courts, I would live in fear if I did not comply with a court order, much less comply with a discovery request. So I find the suggestion to the contrary to be a little incomprehensible. But the point is that Judge Lasnik awarded a number of alternative sanctions by first granting innumerable extensions over a period of three to four months, including one of which was asked for by the plaintiff. He said, oh, I just need additional time, and then that was two months later before the case was dismissed. But he tried monetary sanctions. He tried, he delayed the decision on the motions a number of times. He gave, struck objections, except for attorney-client. So he tried the things that would normally motivate parties to comply, and Judge Lasnik finally concluded that there's just nothing I can further do to get them to comply. Now getting back to your question about actual prejudice, this is an injury case in which the gentleman, Mr. King, was employed aboard my client's vessel, and less than two weeks after he started his employment, he claimed a back injury in which he had surgery. Now he is not a younger gentleman. He's probably in his thirties, I believe, at the time. That's young to us. That's young. Well. A child. A child plaintiff. Well, I would tend to agree, but I'm going to a graduation for my two sons tomorrow. I'm a Wazoo, so I put everything in perspective. But he had an employment history which we have no idea about, and there's a suggestion there that maybe there was something before this. Plus the nature of the accident was that he was carrying a 100-pound bottle where four people were assigned to the job. Now it's difficult for us to understand why someone could get hurt in that instance, and particularly so quickly. So it raises a number of issues that were not within, contrary to counsel's suggestion, were within the control of defendants. I understand why they would like to just try the case on the documents that we had in our possession, but we would actually like to explore a few other things. For instance, did he have prior injuries? What possibly is the ground for liability? So we just don't have to deal with these in the first instance. So how does time work against you on that? So what's the prejudice? Yeah, you've established that you want to do that, but what? The prejudice at that point is that the expert disclosure was coming up in less than a month from the time of the actual dismissal. We had two months. Mr. King lived in Idaho. Doctors were in Idaho and here. It's just an impossibility to get his deposition and get all these done in such a limited time, and to get experts to deal with these issues. On the timing, when you indicated on March 26th that the declaration that they had served discovery responses was false, because they hadn't served any discovery responses at that point. So then King filed a response on April 1, and at that point, King also, he didn't address the discovery response failure at that point. On April 1st. Yes. So the court, at that point, which was just before, a month before the court granted the dismissal, King still hadn't put on the record that he had actually complied with the discovery. Not only that, Your Honor, but King knew he hadn't complied. There's an argument in his case that he didn't know it was a mistake. Dog ate my homework, I think, as you characterized. But the reality is, in an earlier pleading, there was this interesting motion in early March to reopen the case, and where there was a representation made by counsel that, while I served the initial disclosures, putting aside the adequacy of them, but no representation that has served the discovery responses. So counsel understood the difference between the two, and his failure to do it at that point, to do it at subsequent points, to do it at any of the times that he was sent the numerous letters, telephone calls, face-to-face meetings that were held, is just egregious. I mean, the Supreme Court and National Hockey League described that as a flagrant bad faith. So I'm just not sure what Judge Lasnik could have done further. All right, you have used your time. Are there any further questions? Thank you. I think the most telling fact is that the documents that were actually produced had, in fact, all come from the defendants. That is one of the objections the defendants put in, but it's also a fact that those were the only documents in existence. Mr. King has signed medical You're saying you don't have any documents? Other than what had initially been provided by the defendants to Mr. Smith. No, that is where the documents come from. The plaintiff, Mr. King, had signed releases to the defendants. The defendants had obtained medical Did your client ever put in discovery responses? Did he put in Or April 29, 2010, did he answer the interrogatory and discovery requests? Yes, the interrogatories were answered and then there was an attempt to fax those. That's in the record. I don't remember the date that the faxes were issued. You might want to know that since that might be critical. So you're saying that before April 1st that you actually had submitted discovery responses? I'm saying that the defendants had the basic documents all along. You understand the difference between your defendant having whatever it might have. Had the plaintiff responded and given discovery and interrogatory responses before April 1? The discovery responses are That's a yes or a no. I don't have the date in my head. I would have to look that up. It's in the response to the motion. Well, you were just saying that they had faxed something. Yes. So it's another problem that we're going to have. The fax machine is the victim or the devil here? Well, that is what the judge concluded in his order at tab 29 page 5. At best, one could conclude that counsel thought he had filed and served copies of the discovery responses on February 25th, but did not. Even if this were a case of service error, counsel should have confirmed service through CMECF in light of the court's clear order compelling disclosure. So basically, yes, there was an attempted fax on February 25th. I mean, this is sort of amazing that the whole thing, time and again, I attempted to fax. I thought it went through. I had a fax problem. You know, we have electronic filing. You can put notices in through electronic filing. You can even just say, I sent this. I'm unable to confirm. But I think what the judge was saying is if you think you sent it, then confirm one way or the other. Because basically, you're under the gun here with all these court orders to produce. And once again, there seems to be a lack of careful follow-up to determine whether or not it was actually served. Counsel says it never was. And yet at the same time, counsel were meeting regarding other cases. They had depositions together. I mean, there was discussion. So, yes, thanks. No, no. I mean, that's no substitute for complying with Rule 37, is it? No. On the other hand, this is the ultimate sanction under Rule 37. Right. Okay. And we appreciate that. Thank you. Any further questions? Thank you. The case just argued is submitted for decision.
judges: Schroeder, McKeown, Callahan